PACIFIC COAST LAW GROUP
MARK A. GOLOVACH (Cal. Bar No. 220760)
markg@pacificcoastlawgroup.com
555 West 5th Street, 31st Floor
Los Angeles, California 90013
Telephone: 310/684-3966
Facsimile: 310/460-0078

TRAVIS, CALHOUN & CONLON, P.C.
ERIC G. CALHOUN
eric@travislaw.com
1000 Providence Towers East
5001 Spring Valley Road
Dallas, Texas 75244
Telephone: 972/934-4100
Facsimile: 972/934-4101

*Attorneys for Plaintiff*
*Ron Lauer*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RON LAUER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CALIFORNIA COMMERCE CLUB, INC., COMMERCE CASINO, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:10-cv-09909-AHM-MAN<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION OF FIFTH AFFIRMATIVE DEFENSE**<br><br>Judge:   Hon. A. Howard Matz<br>Date:    August 29, 2011<br>Time:    10:00 a.m. |

1

**TABLE OF CONTENTS**

2  I.      PRELIMINARY STATEMENT…………………………………………..1

3  II.     BACKGROUND…………………………………………………………..1

4         A. The ATM Industry and the EFTA………………………………………..1

5         B. Statutory Damages Available Under the EFTA……………………………5

6  III.    ARGUMENT……………………………………………………………..8

7         A. The Court May Award Statutory Damages of up to $500,000 for Each

8            Failure of Commerce Casino to Comply with the EFTA…………………...8

9            1. The Plain Language of the EFTA Penalizes ATM Operators for Each

10               Failure to Comply with the Statute………………………………………8

11           2. Commerce Casino's Authority Does Not Support the Granting of the

12               Motion...........................................................................................11

13               a. Commerce Casino's Caselaw Is Unpersuasive…………….……11

14               b. Commerce Casino's Analogies to Other Federal Statutes Are

15                   Unpersuasive……………………………………………….…………14

16           3. The Maximum Statutory Damages Award Provided by the EFTA

17               Does Not Collectively Apply to All Class Actions Brought Against

18               the Same Non-Compliant ATM Operator…………………………...18

19  IV.    CONCLUSION……………………………………………………………20

20

21

22

23

24

25

26

27

28

-i-

# TABLE OF AUTHORITIES

**CASES**

*Beattie v. D.M. Collections, Inc.*, 764 F. Supp. 925 (D. Del. 1991) ........... 15, 16, 17

*Begala v. PNC Bank, Ohio, N.A.*, 163 F.3d 948 (6th Cir. 1998) ............................ 8

*Brown v. Bank of America, N.A.*, 457 F. Supp. 2d 82 (D. Mass. 2006).................. 12

*Burns v. First American Bank*, No. 04C7682, 2006 U.S. Dist. LEXIS
    92159 (N.D. Ill. Dec. 19, 2006) .................................................................... 13

*Clemmer v. Key Bank, N.A.,* 539 F.3d 349 (6th Cir. 2008) ............................... 8, 18

*Duncan v. Walker,* 533 U.S. 167 (2001)............................................................. 9, 11

*Crabill v. TransUnion L.L.C.,* 259 F.3d 662 (7th Cir. 2001) ................................ 19

*Florence v. National Systems*, No. C82-2020A, 1983 U.S. Dist. LEXIS
    20344 (N.D. Ga. Oct. 14, 1983) ............................................................... 15, 16

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.,* 528 U.S.
    167 (2000) ................................................................................................. 19

*Johnson v. West Suburban Bank*, 225 F.3d 366 (3d Cir. 2000)........................6, 17

*Kaschak v. Raritan Valley Collection Agency*, No. 88-3763, 1989 U.S.
    Dist. LEXIS 19103 (D.N.J. May 23, 1989) ................................................. 16

*Knight v. Commissioner of Internal Revenue*, 552 U.S. 181 (2008) ...................... 9

*Milicevic v. Fletcher Jones Imps., Ltd.*, 402 F.3d 912 (9th Cir. 2005) ................... 8

*Milicevic v. Mercedes-Benz USA, LLC*, 256 F. Supp. 2d 1168 (D. Nev.
    2003) ...................................................................................................... 8, 18

*O'Toole v. United States*, 295 F.3d 1029 (9th Cir. 2002) ................................. 8, 18

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ............................................... 8, 9

*Stilz v. Global Cash Network, Inc.*, No. 10-CV-1998, 2010 U.S. Dist.
    LEXIS 107769 (N.D. Ill. Oct. 7, 2010) ........................................... 12, 13, 14

*United States v. LaBonte*, 520 U.S. 751 (1997) ..................................................... 6

1      Plaintiff Ron Lauer, individually, and on behalf of all others similarly situated

2 ("Plaintiff"), respectfully hereby submits this Response to Defendants California

3 Commerce Club, Inc. and Commerce Casino's (collectively, the "Defendants" or

4 "Commerce Casino") Motion for Summary Adjudication of Fifth Affirmative

5 Defense, scheduled to be heard by the Court on August 29, 2011 at 10:00 a.m.

## I.
## PRELIMINARY STATEMENT

8      Commerce Casino seeks to have the Court interpret the phrase *"arising out of*

9 *the same failure to comply"* to mean arising out of *all* of Commerce Casino's *failures*

10 to comply.   Respectfully, the quoted language is simply not capable of such a

11 construction.  Commerce Casino's failure to put an exterior notice on each ATM at

12 issue was a separate and distinct failure to comply with the EFTA.  The EFTA is a

13 remedial consumer protection statute, entitled to broad construction in favor of ATM

14 users.  Here, the plain dictionary meanings of the words chosen by Congress dictate

15 that the statutory damages cap applies to each separate failure to post an exterior

16 notice at each ATM.  Accordingly, Defendants' Motion should be denied.

## II.
## BACKGROUND

19 **A.**    **The ATM Industry and the EFTA**

20      In 2010 alone, automated teller machines ("ATMs") generated *$7.1 billion in*

21 *fees* charged to consumers.  ATMs are tremendously profitable for ATM operators,

22 such as Commerce Casino.  Indeed, at the current national average charged for ATM

23 fees, ATM operators score a profit of more than 700% on each transaction.  Quite

24 cleverly, these excessive fees are collected for simply allowing a consumer access to

25 their own money.

26      Understandably, ATM operators are entitled to make a profit for themselves.  In

27 amassing their fast and easy profits, however, ATM operators **_must_** abide by certain

28 laws designed to protect consumers from questionable business practices.  Imagine, if

you will, a scenario where a consumer is confronted with a choice between using two different ATMs. One of the ATMs has a sign on the outside of the machine clearly stating that the consumer will be charged a transaction fee for using that particular ATM. The second ATM does not have anything affixed to it, indicating that the same consumer will be charged a transaction fee for using the second ATM. Because some ATMs in the marketplace do not, in fact, impose a transaction fee on consumers, it is understandable that a reasonable consumer would choose the second ATM in an effort to save money by not having to pay a fee. Unfortunately for the consumer, by opting for the second ATM, they just chose a machine that actually charges the consumer a higher transaction fee than the first ATM would have charged the same consumer for the same transaction. Accumulating $7.1 billion in fees per year is done one transaction at a time, and sometimes, by whatever means necessary.

Congress understood the potential for ATM operators who charge consumers ATM transaction fees to make such a tremendous profit without giving the consumers the opportunity to choose. That is why Congress enacted 15 U.S.C. §1693, *et seq.*, which is commonly known as the Electronic Fund Transfer Act (the "Act"). In addition, 12 C.F.R. §205, *et seq.*, commonly known as Regulation E ("Regulation E"), was promulgated by the Board of Governors of the Federal Reserve System to implement the Act (the Act and Regulation E will sometimes be collectively referred to as the "EFTA"). The EFTA establishes the basic rights, liabilities, and responsibilities of consumers who use electronic fund transfer services and of the financial institutions that offer these services. As expressly stated by Congress, the primary objective of the EFTA is the protection of consumers engaging in electronic fund transfers. 12 C.F.R. § 205.1(b).

When deciding on the various requirements to be mandated by the EFTA, Congress chose to obligate ATM operators to provide specific disclosures to consumers prior to the ATM operators charging a transaction fee for using their ATM. As it pertains to this lawsuit, the EFTA specifically requires, *inter alia*, that an ATM

operator **_must_** post a notice attached "on or at" the machine informing consumers of the imposition of an ATM transaction fee. 15 U.S.C. § 1693b(d)(3).[1] This obligation applies to each of the ATM operators' machines. There is good reason for this.

In our earlier hypothetical, once the consumer inserted a card into the second ATM to initiate a cash withdrawal, the transaction was all but finalized. Indeed, after a few quick presses on the keypad, the consumer would be provided with cash and could be quickly on their way. In today's fast-paced world, a reasonable consumer will not terminate their withdrawal in the middle of the transaction, after standing in line at one of Defendants' busy ATMs, once they learn the ATM is going to charge a transaction fee in order to use another nearby ATM that has the proper fee notice posted "on or at" the machine. This is because the consumer already knows the EFTA-compliant ATM will also charge them a transaction fee. In essence, the consumer is forced to choose between continuing with the transaction and paying a transaction fee to the non-compliant ATM operator, or terminating the withdrawal and beginning a new transaction at an EFTA-compliant ATM that they know will also charge them a fee. The consumer will very likely proceed with their current withdrawal, while the non-compliant ATM operator reaps the financial benefits of its misleading ATMs.[2]

---

[1] Commerce Casino admits "[t]he EFTA requires that ATM operators post two notices on the ATMs before an ATM fee can be charged – **_one notice must be 'on or at' the ATM machine itself_**, and the second must be on a click-through screen that gives notice of the actual amount of the fee that will be charged …." Defendants' Motion for Summary Adjudication of Fifth Affirmative Defense (the "Motion"), pp. 2-3 (all emphases are deemed added unless otherwise noted). Tellingly, Commerce Casino does not claim it posted the fee notices "on or at" its ATMs.

[2] Additionally, Commerce Casino's choice to make a bigger profit rather than post the required fee notices puts other legitimate ATM operators who are compliant with the EFTA at a severe disadvantage in the marketplace. This is because the reasonable consumer is going to avoid an ATM with a posted fee notice in order to locate an

1    With the above in mind, Congress provided ATM operators with a choice under

2    the law when it enacted the EFTA.   ATM operators who charge consumers a

3    transaction fee can choose to provide the requisite fee notice "on or at" the machine at

4    risk of losing consumers who would elect to use another ATM without such a

5    transaction fee, or they can choose to not provide the posted fee notice at risk of

6    paying statutory damages should a consumer bring a lawsuit such as this one.  Here,

7    Commerce Casino chose the former in hopes of making more profit on its ATMs.

8    From Commerce Casino's perspective, its choice to violate the EFTA seems to have

9    been an extremely good business decision.

10    In no uncertain terms, Commerce Casino has intentionally, frequently, and

11    persistently violated the EFTA for many years.  ***In fact, in 2010 alone, there were***

12    ***likely hundreds of thousands of transactions at the Commerce Casino ATMs, and***

13    ***Commerce Casino likely collected well in excess of $1,000,000 in illegal ATM***

14    ***surcharge fees.   Moreover, on information and belief, Plaintiff believes that***

15    ***discovery will reveal that Commerce Casino's illegal business practice has been***

16    ***ongoing for over a decade, and Commerce Casino has collected tens of millions of***

17    ***dollars illegally in ATM transaction fees***.[3]   Unfortunately for the consumers of

18    California, by virtue of the statute of limitations under the EFTA, Commerce Casino

19    will likely be able to keep the vast majority of that ill-gotten fortune regardless of the

20    outcome of this lawsuit.

21    / / /

22    _____

23    ATM without a posted fee notice with the assumption that their chosen ATM will not
24    charge them a fee.

25    [3] Importantly, 15 U.S.C. § 1693b(d)(3)(C), and its implementing regulation, 12 C.F.R.
§ 205.16(e), provide that ***no fee may be imposed by an ATM*** operating in connection
26    with any electronic fund transfer initiated by a consumer for which a notice is required
27    ***unless the consumer is provided both notices*** required pursuant to 12 C.F.R. §
205.16(c).
28

- 4 -

## B.   Statutory Damages Available Under the EFTA

When Congress enacted the EFTA, it chose to structure the statute in a way to encourage compliance and penalize non-compliance.  Pursuant to the EFTA, an ATM operator is separately liable for up to $500,000 in statutory damages for each ATM it operates that does not have the required fee notice posted "on or at" the ATM.  Of course, Congress providing for a maximum statutory damages award of $500,000 for each non-compliant ATM does not mean that each ATM in violation of the EFTA will necessarily justify the maximum award.  Rather, the circumstances surrounding each non-compliant ATM will dictate an appropriate penalty for the ATM operator.  Surely, if a non-compliant ATM collected $1 million in transaction fees over the course of a year, a statutory damages award of $500,000 would seem like a slap on the wrist to the ATM operator (and might even encourage its continued non-compliance with the EFTA if enough consumers could be tricked into initially believing the non-compliant ATM did not charge a transaction fee).

Here, Plaintiff believes the critical issue before the Court is the meaning of the phrase "arising out of the same failure to comply," which was specifically included by Congress in the EFTA's statutory damages scheme.  The Court's interpretation of that phrase will likely determine whether Commerce Casino merely gets a slap on the wrist (relative to the tens of millions of dollars in illegal ATM transactions fees it collected over the years), or whether Commerce Casino (which is the largest card casino in the entire world, and where more than 8,000 people a day play cards) may face a statutory damages award more in line with its long-term and highly-profitable, but completely illegal, ATM enterprise.

/ / /

/ / /

/ / /

/ / /

/ / /

1   The interpretation of the words "arising out of the same failure to comply"

2   (assuming their plain meaning is unclear) is one of first impression in the 9th Circuit.[4]

3   Notwithstanding, it is undeniable that the phrase "arising out of the same failure to

4   comply" was specifically included in the EFTA by Congress, and it is equally

5   undeniable the words Congress decides to include in legislation have meaning and

6   purpose.  Indeed, courts "do not start from the premise that [the statutory] language is

7   imprecise.  Instead, [courts] assume that in drafting this legislation, Congress said

8   what it meant."  *United States v. LaBonte*, 520 U.S. 751, 757 (1997).

9   Although Commerce Casino operates five (5) separate, non-compliant ATMs, it

10   argues that statutory damages in this class action, regardless of the number of non-

11   compliant ATMs at issue, should be capped as a matter of law at a maximum of

12   $500,000.  Commerce Casino is wrong.  As stated, *supra*, the interpretation of the

13   words "arising out of the same failure to comply," and the impact of that phrase on the

14   EFTA's maximum statutory damages award, are issues of first impression in the 9th

15   Circuit.  The slim caselaw from other courts relied upon by Commerce Casino to

16

17   _____

[4] Commerce Casino attempts to muddy the waters by implying certain statements

18   reference the EFTA when, in fact, they refer to other Federal statutes. For example,

19   Commerce Casino implies that under the EFTA "Congress created the statutory cap

20   for class actions in order to provide potential defendants with a meaningful incentive

21   to comply with the law, but to do so 'without subjecting [defendants] to enormous penalties for violations which do not involve actual damages and may be of a

22   technical nature.'" Motion, pp. 1-2.  Commerce Casino's citation, however, was taken

23   directly from the legislative history of the Truth in Lending Act, 15 U.S.C. §1601 *et seq.* ("TILA").  *See Johnson v. West Suburban Bank*, 225 F.3d 366 (3d Cir. 2000)

24   (quoting S. Rep. No. 93-278, at 14-15 (1973)).  Indeed, the very next sentence of the Motion implies that under the EFTA "Congress stated that 'a potential half million

25   dollar recovery ought to act as a significant deterrent to even the largest [defendant].'"

26   Motion, p. 2.  Similarly, this quote was also taken directly from the Legislative history of TILA.  *See Johnson*, 225 F.3d at 372-73 (quoting S. Rep. No. 94-590, at 8 (1976)).

27   As will be shown, *infra*, Commerce Casino's claims about the EFTA are not entirely accurate and should be viewed with skepticism.

28

POINTS AND AUTHORITIES ISO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

support its position is unpersuasive as the cases simply do not analyze the EFTA's statutory damages scheme with any depth or detail.  Moreover, although Commerce Casino attempts to analogize the statutory damages schemes of other Federal statutes, such as TILA and the Fair Debt Collection Practices Act, 15 U.S.C. §1692k ("FDCPA"), those statutes were either not designed for the same purposes as the EFTA or were drafted with entirely different language than the EFTA.  As such, Commerce Casino's strained comparisons to other statutes are of no assistance in determining the EFTA's statutory damages scheme and, thus, should be disregarded.

To highlight just one compelling reason to deny the present Motion, Plaintiff respectfully directs the Court's attention to another hypothetical situation involving violations of the EFTA.  If, for example, there were multiple ATMs at issue in a particular class action lawsuit which had at least 330,000 combined non-compliant transactions in a single year (as is the likely situation in this lawsuit), and assuming statutory damages of only $500,000 would be awarded to the class, the total recovery for the class would amount to no more than an approximately $1.50 statutory damages award per transaction.  In this scenario, however, the offending ATM operator likely collected at least $3.00 for each ATM transaction (which is the exact amount Commerce Casino charged Plaintiff for his ATM transaction).  In other words, if Commerce Casino could have its way, in this scenario (as in this lawsuit), a defendant could conceivably violate the EFTA with respect to different non-compliant ATMs, be found liable for the supposed maximum statutory damages award of $500,000, and yet still make out like a bandit even though ***every*** ATM transaction fee was illegally collected.  Plaintiff respectfully reminds the Court that, pursuant to the EFTA, ATM operators are forbidden by Congress to charge a transaction fee unless the consumer is ***provided both notices*** required pursuant to 12 C.F.R. § 205.16(c).  Such an absurd result as the above hypothetical could never have been envisioned by Congress as this would entice ATM operators to purposefully violate the EFTA in an effort to mislead consumers into using their non-compliant ATMs.  Accordingly, Plaintiff and the

putative Class respectfully request the Court to deny Commerce Casino's Motion, and find that the EFTA provides for a maximum statutory damages award of $500,000 for each non-compliant ATM at issue.

### III.
### ARGUMENT
### A.   The Court May Award Statutory Damages of up to $500,000 for Each Failure of Commerce Casino to Comply with the EFTA

Commerce Casino argues the EFTA caps the statutory damages in a class action, regardless of the number of non-compliant ATMs at issue, at a maximum of $500,000. *See, e.g.,* Motion, at pp. 6-8. Commerce Casino is misguided. The EFTA is a remedial consumer protection statute. *See, e.g., Clemmer v. Key Bank, N.A.,* 539 F.3d 349, 350, 353 (6th Cir. 2008). "[A] remedial statute [*sic*] should be construed liberally, and its exceptions should be read narrowly." *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002). Moreover, "a remedial statute [*sic*] should be read broadly in favor of the consumers the law was designed to protect." *Milicevic v. Mercedes-Benz USA, LLC*, 256 F. Supp. 2d 1168, 1175 (D. Nev. 2003) (affirmed by *Milicevic v. Fletcher Jones Imps., Ltd.*, 402 F.3d 912 (9th Cir. 2005)). Further, the EFTA is accorded "a broad, liberal construction in favor of the consumer." *Clemmer*, 539 F.3d at 353 (quoting *Begala v. PNC Bank, Ohio, N.A.*, 163 F.3d 948, 950 (6th Cir. 1998)). Disregarding these directives, Commerce Casino's reading of the statute conveniently ignores key words Congress purposefully included in the Legislation. Those key words are critical to the Court's decision on the Motion.

### 1.   The Plain Language of the EFTA Penalizes ATM Operators for Each Failure to Comply with the Statute

As indicated, Plaintiff believes the EFTA allows for a maximum statutory damages award against an ATM operator of up to $500,000 for each non-compliant ATM at issue in a class action lawsuit. Each time the ATM operator does not post a notice "on or at" an ATM, that is a "separate and distinct failure to comply" with the EFTA. Plaintiff finds his support in the plain language of the statute. *See Robinson v.*

*Shell Oil Co.*, 519 U.S. 337, 341 (1997) (explaining that the plain meaning of statutory language is determined by reference to the specific context in which the language is used and the broader context of the statute as a whole); *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (explaining that "[i]t is [a court's] duty to give effect, if possible, to every clause and word of a statute.") (citation omitted); *Knight v. Commissioner of Internal Revenue*, 552 U.S. 181, 190 (2008) (noting that accepting a particular approach "would render part of the statute entirely superfluous, something we are loath to do") (citation omitted).

Here, the relevant portion of the EFTA provides:

> [T]he total recovery under this subparagraph in any class action or series of class actions ***arising out of the same failure to comply*** by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant.

15 U.S.C. §1693m(a)(2)(B)(ii).  As directed by the Supreme Court, "[i]t is [a court's] duty to give effect, if possible, to every clause and word of a statute."  *Duncan*, 533 U.S. at 174 (citation omitted).  Thus, we need to ensure that the words Congress chose to include in the EFTA's statutory damages scheme are each given meaning and effect.

Plaintiff believes a brief review of the definitions of the relevant words (*i.e.*, "arising out of the same failure to comply") goes a long way in dispelling Commerce Casino's argument that the $500,000 cap applies to each lawsuit regardless of the number of non-compliant ATMs at issue.[5]  According to Webster's Dictionary, the word "arise" means "to originate from a source."  Similarly, the term "out of" is "used as a function word to indicate origin, source, or cause."  Further, Webster's defines the word "same" as meaning "identical" and "equal in size, shape, value, or importance –

---

[5] The following definitions are from Webster's Dictionary, found at www.merriam-webster.com.

1  usually used with *the* ...."  Further, the word "failure" is defined as an "omission of

2  occurrence or performance; *specifically*: a failing to perform a duty or expected

3  action."  Lastly, the word "comply" means "to conform, submit, or adapt (as to a

4  regulation or to another's wishes) as required or requested."

5       Taken together, these combined words have **_only_** one meaning; Congress

6  specifically intended that if a violation of the EFTA originates from a different (*i.e.*,

7  not identical) omission to conform to the EFTA's provisions, then each separate

8  omission subjects the non-compliant ATM operator to a separate maximum award of

9  $500,000.  These words were included in the EFTA for a reason, and they simply

10  cannot be reasonably read in any other fashion.  The lack of notice on each machine

11  was a separate and distinct failure to comply with a legal obligation.  Indeed, it is

12  telling that after service of the summons and complaint was effectuated, Commerce

13  Casino allegedly posted the required "on the machine" fee notices on each of its five

14  (5) separate ATMs.  This is an admission by Commerce Casino that it had (and has)

15  separate and distinct obligations under the EFTA to post "on the machine" fee notices

16  on each of its ATMs.

17       This class action centers on the fact that Commerce Casino operated five (5)

18  ATMs that each failed to comply with the EFTA by not having the required "on the

19  machine" posted fee notice.  Commerce Casino failed to comply with the EFTA's "on

20  the machine" fee notice requirement with respect to each machine.  In other words,

21  Commerce Casino operating five (5) separate non-compliant ATMs cannot be

22  considered the "same failure to comply" with the EFTA; rather, it is five (5) different

23  failures to comply.  Commerce Casino had a separate and distinct legal obligation to

24  post exterior notices at each of its ATMs.  Because each of the five (5) separate

25  failures is, by definition, not the "same failure," the EFTA's statutory damages cap of

26  $500,000 applies to each of Commerce Casino's five (5) non-compliant ATMs.

27  / / /

28

POINTS AND AUTHORITIES ISO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

1    Quite simply, Commerce Casino's interpretation of the EFTA's damages

2 scheme would read the words "arising out of the same failure to comply" completely

3 out of the statute.  Commerce Casino reads the statute to cap damages at $500,000 for

4 "all of its failures to comply" with the EFTA.  We know, however, that the words

5 Congress decides to include in legislation have meaning and purpose.  Thus, because

6 the Court must "give effect, if possible, to every clause and word of a statute," it is

7 unreasonable for Commerce Casino to simply brush aside the language of the statute

8 as if it does not exist.  *Duncan*, 533 U.S. at 174.  Accordingly, Plaintiff and the

9 putative Class respectfully request the Court to deny Commerce Casino's Motion, and

10 find that the EFTA provides for a maximum statutory damages award of $500,000 for

11 each non-compliant ATM at issue.

12           2.    **Commerce Casino's Authority Does Not Support the Granting**

13                 **of the Motion**

14                 a.    **Commerce Casino's Caselaw Is Unpersuasive**

15    Commerce Casino claims that every court to have considered whether the

16 EFTA's statutory cap applies to the entire action or to each separate ATM at issue has

17 sided with Commerce Casino's interpretation of the statutory damages scheme.

18 Motion, at pp. 8-10.  While it may be true that a small number of cases may have

19 commented that the EFTA's statutory damages cap applies to each lawsuit, the

20 statements are for the most part dicta and lack thoughtful analysis to support the

21 statements.  As Commerce Casino concedes, "courts have always held ***or assumed***

22 that the potential recovery for the entire action under the EFTA was capped at

23 $500,000."[6]  *Id.*, at p. 8.  Plaintiff respectfully states that those courts' assumptions

24 _____

25 [6] Commerce Casino appears to proffer any supportive statement it can muster in an
attempt to minimize its liability regardless of the synergy between its assertions.  For
26 example, Commerce Casino's statement that courts have unanimously held "the
potential recovery for the entire action under the EFTA [i]s capped at $500,000," is in
27 direct contradiction to Commerce Casino's claim that the EFTA's statutory damages
28

1   were incorrect.  Moreover, Commerce Casino's own caselaw confirms that "[n]o court
2   (in this district or others) has explicitly addressed whether the EFTA provides for per-
3   violation statutory damages …." *Id.*, at p. 9 (citing *Stilz v. Global Cash Network, Inc.*,
4   No. 10-CV-1998, 2010 U.S. Dist. LEXIS 107769 (N.D. Ill. Oct. 7, 2010)).  As this
5   issue is one of first impression in the 9th Circuit, Plaintiff believes a true and
6   thoughtful analysis of the EFTA's damages scheme will clarify the intent of Congress
7   (if the statute's plain language is somehow unclear), and support this Court denying
8   the Motion.

9        Commerce Casino's very first citation to support its assertion that the EFTA's
10  statutory damages cap applies to each lawsuit is a case captioned, *Brown v. Bank of*
11  *America, N.A.*, 457 F. Supp. 2d 82 (D. Mass. 2006).  Motion, at p. 8.  Commerce
12  Casino claims the *Brown* court cited to the EFTA and held the plaintiffs' maximum
13  statutory damages award would be capped at $500,000 even though numerous ATMs
14  were at issue in the case.  *Id.*, at p. 8.  Unfortunately, the preceding sentence is about
15  the extent of the *Brown* court's analysis on the issue at hand.  In *Brown*, the heart of
16  the court's decision centered on whether the wording of certain fee notices posted "on
17  or at" the defendant's ATMs contained the proper verb regarding the word "may."
18  *Brown*, 457 F. Supp. 2d at 85.[7]  After deciding the defendant's fee notices were
19  sufficient under the EFTA, the *Brown* court merely mentioned, ***in a footnote***, that the
20  cap would be limited to $500,000 for the four putative subclasses. *Id.*, at 89 n.2.  The
21  *Brown* court, however, stated that because "the two state causes of action have been
22  resolved in the Bank's favor, this Court need not reach the issue [of the defendant's
23  exposure under the EFTA's statutory damages scheme]," and the court conducted no
24

---

25  "cap applies even to multiple lawsuits … against a single defendant."  *Compare*
26  Motion, at p. 8, *with* Motion, at p. 7.

27  [7] *Brown* is unlike this lawsuit because Commerce Casino chose to provide no posted
28  fee notice whatsoever on its ATMs.

1    analysis on that particular issue.  *Ibid*.  As such, Commerce Casino's primary case is

2    nothing more than one court's conclusory dicta in a footnote about the EFTA's

3    statutory damages scheme.  As stated, *supra*, Commerce Casino's claims about the

4    EFTA are not entirely accurate and should be viewed with skepticism.

5        The next Federal citation in the chain of Commerce Casino's supposed

6    "unanimous" decisions on the issue before this Court is a matter styled, *Burns v. First*

7    *American Bank*, No. 04C7682, 2006 U.S. Dist. LEXIS 92159 (N.D. Ill. Dec. 19,

8    2006).  Motion, at p. 9.  Similar to *Brown*, however, the court in *Burns* was not

9    directly faced with the issue of whether the EFTA's statutory cap applies to the entire

10   action or to each separate ATM at issue.  Rather, the issue before the *Burns* court was

11   class certification and whether the plaintiffs satisfied the requirements of Rule 23 of

12   the Federal Rules of Civil Procedure.  *Burns*, 2006 U.S. Dist. LEXIS at *2.  After

13   analyzing the requirements of Rule 23, the *Burns* court found that the plaintiffs met

14   their burden and certified a class of consumers related to the defendant's violation of

15   the EFTA's fee notice provisions.  *Id.*, at *41.  As part of its class certification

16   analysis, the *Burns* court found that a class action was superior to other methods for

17   adjudicating the claims of the class.  *Id.*, at *32-35.  In considering the narrow issue of

18   class certification, the *Burns* court merely commented, in a one paragraph statement,

19   that the class recovery would be capped at $500,000.  *Id.*, at *34.  Exactly as in

20   *Brown*, however, the court in *Burns* simply made a conclusory remark about the

21   EFTA's statutory damages scheme.  There was no briefing or contested issue

22   regarding the interpretation or application of the cap.  And exactly as in *Brown*, the

23   *Burns* comment is dicta and lends no support to Commerce Casino's position on this

24   issue.

25       The last Federal citation offered by Commerce Casino to support its strained

26   reading of the EFTA is a case entitled, *Stilz*, U.S. Dist. LEXIS 107769.  As is the

27   situation with Commerce Casino's other "unanimous" decisions purporting to analyze

28   the EFTA's statutory damages scheme, the court in *Stilz* was not actually faced with

1  the decision as to whether in a class action context the EFTA's statutory cap applies to

2  the entire action or to each separate ATM at issue.  Rather, *Stilz* involved a decision as

3  to whether a defendant's offer of judgment mooted a plaintiff's individual claims and,

4  therefore, extinguished the court's subject matter jurisdiction.  *Stilz*, 2010 U.S. Dist.

5  LEXIS at *3.   Just like Commerce Casino's other caselaw, *Stilz* forgoes any

6  thoughtful analysis on the issue relevant to the present Motion, and simply offers a

7  conclusory statement on the EFTA's statutory damages scheme.  *Id.*, at *12-13.

8      Interestingly, the *Stilz* court suggests that a plaintiff claiming multiple violations

9  of the EFTA against a single ATM operator involving multiple ATMs may want to

10 make a strategic decision to file multiple lawsuits in order to recover multiple

11 statutory damages awards.  *See Stilz*, 2010 U.S. Dist. LEXIS at *12, n.3.  The *Stilz*

12 court made this observation as it related to the filing of multiple individual actions.

13 *Id*.  Plaintiff herein suggests that this course of action in the class action context,

14 although entirely justified and reasonable to protect the interests of the members of the

15 classes, is not what Congress envisioned.  This lends further support to Plaintiff's

16 position that Congress included the phrase "arising out of the same failure to comply"

17 to allow consumers to allege multiple violations of the EFTA in a single class action

18 lawsuit without the impediment of a singularly-available statutory damages award.

19 Accordingly, Plaintiff and the putative Class respectfully request the Court to deny

20 Commerce Casino's Motion, and find that the EFTA provides for a maximum

21 statutory damages award of $500,000 for each non-compliant ATM at issue.

22         **b.     Commerce Casino's Analogies to Other**
23                  **Federal Statutes Are Unpersuasive**

24         As has been shown, *supra*, Commerce Casino's reading of the EFTA's statutory

25 damages scheme conveniently ignores the plain language of the statute.  Additionally,

26 Commerce Casino's supposed "unanimous" caselaw on the present issue amounts to

27 no more than a few fleeting statements contained in dicta from courts outside the 9th

28 Circuit.  In a last-ditch effort to minimize its liability, Commerce Casino shifts the

1   Court's attention as far away from the EFTA as possible by attempting to analogize

2   the statutory damages schemes of other Federal statutes, such as TILA and FDCPA.

3   Motion, at pp. 9-13.   This Court, however, should look past Commerce Casino's

4   attempted use of smoke and mirrors.   Indeed, the other statutes Commerce Casino

5   relies on were either not designed for the same purposes as the EFTA or were drafted

6   with entirely different language than the EFTA.   As such, Commerce Casino's

7   awkward comparisons to other Federal statutes are of no assistance in determining the

8   EFTA's statutory damages scheme and, thus, should be disregarded.

9         In support of its strained analogies, Commerce Casino cites to a matter styled,

10  *Beattie v. D.M. Collections, Inc.*, 764 F. Supp. 925 (D. Del. 1991), for the proposition

11  that the EFTA provides for a single statutory damages award.  Motion, at p. 10, n.4.

12  Unlike here, the statute at issue in *Beattie* was the FDCPA.  *Beattie*, 764 F. Supp. 925.

13  The *Beattie* court was asked to decide whether the FDCPA entitles plaintiffs to a

14  single award of statutory damages per plaintiff per lawsuit or to an award of statutory

15  damages for each violation of the FDCPA proved.  *Ibid*.  The *Beattie* court concluded

16  that when violations of the FDCPA have been proved, the statute provides for a single

17  recovery of statutory damages per plaintiff per lawsuit.  *Id.*, at 928.  Plaintiff believes

18  the *Beattie* holding is less important than the route that court traveled to reach its

19  decision.

20        In interpreting the FDCPA's statutory damages scheme, the *Beattie* court

21  acknowledged the plaintiffs' citation to a case captioned, *Florence v. National*

22  *Systems*, No. C82-2020A, 1983 U.S. Dist. LEXIS 20344 (N.D. Ga. Oct. 14, 1983).

23  *Id.*, at 927.   The *Beattie* court went on to quote the reasoning proffered by the

24  *Florence* court, which allowed statutory damages under the FDCPA to be awarded ***per***

25  violation:

26              The FDCPA protects against abuses doubly inflicted on a
            consumer, and provides for judicial discretion in
27          determining the damages to be awarded.  To effectuate the
            explicit purposes of the FDCPA, there should be more
28

1
2
3
4
5

> protection afforded to a consumer receiving a series of misleading, abusive letters in a dunning campaign alleging two (or more) debts as for one …. Other considerations include the legislative purpose in providing for an effective private enforcement mechanism of the FDCPA as well as the deterrent effect upon abusive collection attempts.

6  *Beattie*, 764 F. Supp. at 927 (quoting *Florence*, 1983 U.S. Dist. LEXIS at *13-14).

7  The *Beattie* court stated that "the court agrees with much of [the *Florence*'s court's]

8  reasoning," but then strangely chose to not accept its result. *Id.*, at 927. The court in

9  *Beattie* suggested that "the court in *Florence* did not explain away the language of [the

10  FDCPA] which limits statutory damages 'in the case of *any action by an individual*,

11  such additional damages as the court may allow, but not exceeding $1,000.'" *Ibid*.

12  (emphasis in original).

13      Importantly, the statutory damages scheme of the FDCPA does **_not_** contain the

14  phrase "arising out of the same failure to comply" that Congress specifically chose to

15  include in the EFTA. Thus, Commerce Casino's attempt to rely on an analogy to an

16  entirely different statute that was drafted with entirely different language is entirely

17  unconvincing. Moreover, it seems reasonable to presume that had Congress included

18  the phrase "arising out of the same failure to comply" in the FDCPA, the *Beattie* court

19  would have not only accepted the reasoning of *Florence*, but also its result.[8]

20      The *Beattie* court also acknowledged the plaintiffs' citation to a case captioned,

21  *Kaschak v. Raritan Valley Collection Agency*, No. 88-3763, 1989 U.S. Dist. LEXIS

22  19103 (D.N.J. May 23, 1989). *Beattie*, 764 F. Supp. at 927. Although *Kaschak*

23  allowed statutory damages under the FDCPA for **_each_** violation of the statute, the

24  _____

25  [8] The *Beattie* court noted it was aware that language from an earlier version of the FDCPA specifically limiting a plaintiff to a single recovery was notably absent from
26  the final version of the FDCPA. *Beattie*, 764 F. Supp. at 928, n.4. The court from Delaware, however, simply ignored this important fact to arrive at what seems to have
27  been a predetermined decision to limit the liability of the defendant company.
28

1    *Beattie* court declined to follow its holding.  In so doing, the *Beattie* court attempted

2    to explain that, unlike other statutes, the FDCPA authorizes an award of both statutory

3    damages and actual damages.  *Ibid*.  The *Beattie* court went on to justify its position

4    by claiming that "[i]t is likely that particularly egregious violations of the FDCPA will

5    result in significantly higher awards of actual damages for infliction of emotional

6    distress, etc.  Consequently, it is likely that a culpable debt collector's liability for

7    actual damages will be proportional to the violations committed."  *Ibid*.

8        Similar to the FDCPA, the EFTA allows both statutory and actual damages.  15

9    U.S.C. §1693m.  However, unlike the FDCPA, claims alleging, for example, infliction

10   of emotional distress are simply not available under the EFTA to a consumer that used

11   a non-compliant ATM.  Accordingly, the "safety net" the *Beattie* court referred to

12   with respect to the FDCPA's damages scheme is not present under the EFTA.  As

13   such, Commerce Casino's reliance on interpretations of other statutes should be

14   disregarded.

15       The same result applies to Commerce Casino's comparison of the EFTA to

16   TILA.  Motion, at pp. 12-13.  Indeed, Commerce Casino argues that the Legislative

17   history of TILA somehow proves Congress sought to limit the EFTA's statutory

18   damages scheme.  Motion, at p. 12.  This is a stretch no bridge can gap.  Commerce

19   Casino asserts that "Congress has explicitly dispelled [Plaintiff's] suggestion by

20   stating that 'a potential half million dollar recovery ought to act as a significant

21   deterrent to even the largest' defendant."  Motion, at p. 13 (citing *Johnson*, 225 F.3d at

22   372-73).  Aside for the very important fact that the above quote is ***not*** from the

23   Legislative history of the EFTA, this very lawsuit is direct evidence that an ATM

24   operator collecting over $1 million a year in illegal ATM transaction fees will

25   certainly ***not*** be deterred from violating the EFTA even if faced with a $500,000

26   statutory damages award.  Accordingly, Plaintiff and the putative Class respectfully

27   request the Court to deny Commerce Casino's Motion, and find that the EFTA

28

1  provides for a maximum statutory damages award of $500,000 for each non-compliant

2  ATM at issue.[9]

3      **3.    The Maximum Statutory Damages Award Provided by the**

       **EFTA Does Not Collectively Apply to All Class Actions**

4      **Brought Against the Same Non-Compliant ATM Operator**

5

6      Commerce Casino makes the unbelievable claim that the EFTA limits the

7  statutory damages award to $500,000 even if numerous consumers file multiple class

8  action lawsuits concerning separate and distinct non-compliant ATMs operated by the

9  same defendant.  Motion, at p. 7.  Nothing could be further from the truth.  Because

10 the EFTA is a remedial consumer protection statute, the 9th Circuit construes the

11 EFTA liberally, and its exceptions are read narrowly.  *See O'Toole*, 295 F.3d at 1037.

12 Moreover, a remedial statute, such as the EFTA, "should be read broadly in favor of

13 the consumers the law was designed to protect."  *Milicevic*, 256 F. Supp. 2d at 1175.

14 Importantly, the EFTA is accorded "a broad, liberal construction in favor of the

15 consumer."  *Clemmer*, 539 F.3d at 353 (citation omitted).

16     Here, Commerce Casino would have this Court believe that once the statutory

17 damages award for violating the EFTA reached a total of $500,000 against a non-

18 compliant ATM operator, the ATM operator would no longer face any further

19 statutory damages of any kind.  This strained interpretation of the statutory damages

20 scheme, however, would likely ***encourage*** non-compliance with the EFTA by

21 incentivizing large-scale enterprises, such as Commerce Casino, to completely

22 disregard the statute in the hopes of misleading consumers into using their ATMs.  As

23 Plaintiff has become aware, operating just a ***single*** misleading and non-compliant

24 ─────────────────

25 [9] Moreover, there is a very simple way for ATM operators to avoid reaching the
   $500,000 cap for each non-compliant ATM they operate; namely, the ATM operator
26 merely must stop attempting to mislead consumers into believing the ATM at issue
27 does not charge a transaction fee by posting the requisite fee notice "on or at" the
   machine.
28

1  ATM (if the ATM is located in a prime location servicing thousands of individuals

2  every day) can regularly collect several hundreds of thousands of dollars a year in

3  transaction fees (if not more).  It should, however, not be profitable for a defendant to

4  violate a Federal statute.

5         Commerce Casino argues that because Congress chose to include the phrase

6  "series of class actions" in the statute, this means that Congress intended "that the cap

7  applies even to multiple lawsuits … against the same defendant."  Motion, at p. 7.

8  Again, Commerce Casino's reading of the EFTA is misguided.  Clearly, Congress did

9  not intend ***under any circumstances*** to give ATM operators carte blanche to

10  completely disregard the EFTA.[10]  In fact, statutory damages are meant, in part, to

11  deter future violations, much the way civil penalties do.  *See Friends of the Earth, Inc.*

12  *v. Laidlaw Envt'l. Servs. (TOC), Inc.,* 528 U.S. 167, 185 (2000).  Such damages are

13  common in consumer protection statutes, and assist the government in enforcing

14  federal laws.  *See Crabill v. TransUnion L.L.C.,* 259 F.3d 662, 665 (7th Cir. 2001).  If,

15  however, an ATM operator knows it will not be subjected to even a penny of liability

16  above a statutory damages award of $500,000, future violations will undoubtedly ***not***

17  be deterred.

18         Based, in part, on the above, the only reasonable interpretation behind the intent

19  of Congress to include the phrase "series of class actions" in the statute is to conclude

20  that Congress meant the cap to apply in a situation where more than one plaintiff files

21  a class action involving the same non-compliant ATM.  The bottom-line remains the

22

23  ─────────────────

24  [10] Plaintiff is aware of at least one ATM operator that, according to its 2010 Annual
Report, operates approximately 20,000 ATMs in the United States alone and had

25  revenue in 2010 of over $532 million.  Cardtronics, Inc., Form 10-K Annual Report,
filed March 3, 2011.  Certainly, Congress did not intend there to be a situation where

26  such an enormous ATM operation (similar to Commerce Casino's) could potentially
pay a statutory damages award of just $500,000 (a drop in the bucket for a company

27  this size), and then freely violate the EFTA with respect to its 20,000 ATMs.

28

same; namely, that Congress intended to afford courts the possibility of awarding statutory damages of up to $500,000 for each non-compliant ATM at issue (if the circumstances justified the maximum award), but wanted to limit the maximum award to the $500,000 amount if more than one class action was commenced involving the "same failure to comply" with the EFTA. Accordingly, Plaintiff and the putative Class respectfully request the Court to deny Commerce Casino's Motion, and find that the EFTA provides for a maximum statutory damages award of $500,000 for each non-compliant ATM at issue in this class action.

## IV.
## CONCLUSION

Commerce Casino's proposed construction of the EFTA to cap damages at $500,000 for "all of its failures to comply" with the notice requirement is at odds with the plain language of the statute. The disputed language clearly applies to each failure to comply with the EFTA. Accordingly, Commerce Casino's Motion should be denied.

DATED: July 25, 2011 /s/ Mark A. Golovach

MARK A. GOLOVACH

PACIFIC COAST LAW GROUP
555 West 5th Street, 31st Floor
Los Angeles, California 90013
Telephone: 310/684-3966
Facsimile: 310/460-0078

TRAVIS, CALHOUN & CONLON, P.C.
ERIC G. CALHOUN
1000 Providence Towers East
5001 Spring Valley Road
Dallas, Texas 75244
Telephone: 972/934-4100
Facsimile: 972/934-4101

*Attorneys for Plaintiff*
*Ron Lauer*

## CERTIFICATE OF SERVICE

## U.S. DISTRICT COURT – CENTRAL DISTRICT OF CALIFORNIA

On July 25, 2011, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON FIFTH AFFIRMATIVE DEFENSE** with the Clerk of Court using the CMF/ECF system, which shall send notification of such filing to the following attorneys of record at the following listed E-mail addresses:

Rebekah Kaufman, Esq.                    Attorneys for Defendants
Morrison & Foerster LLP                   California Commerce Club, Inc. and
425 Market Street                         Commerce Casino
San Francisco, California 94105-2482
RKaufman@mofo.com

Dale K. Larson, Esq.                      Attorneys for Defendants
Morrison & Foerster LLP                   California Commerce Club, Inc. and
555 West 5th Street                       Commerce Casino
Los Angeles, California 90013-1024
DLarson@mofo.com

This document was served on all counsel who are deemed to have consented to electronic service, pursuant to L.R. 5-3.3 (Service of Electronically Filed Documents). Pursuant to the Federal Rules of Civil Procedure, Rule 5, all counsel of record not deemed to have consented to electronic service through the CMF/EFC system were served with a true and correct copy of the foregoing document via U.S. First Class Mail.  The undersigned, however, is not aware of any counsel of record who has not consented to electronic service through the CMF/ECF system.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on July 25, 2011, at San Diego, California.

/s/ Mark A. Golovach
_____
Mark A. Golovach